**E-FILED**
Thursday, 08 September, 2016  10:29:32 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **LUCAS A. LAMB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 16-3004** |
| | ) | |
| **ROBERT MCMILLEN** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendant Robert McMillen's Motion to Dismiss Plaintiff Lucas A. Lamb's Complaint Pursuant to Rule 12(b)(6) (d/e 6).  Defendant's Motion to Dismiss is GRANTED. Plaintiff's Complaint does not state a claim for malicious prosecution under federal or state law or a claim for unlawful retaliation in violation of the First Amendment.  Defendant and the prosecutor both had probable cause to believe that Plaintiff had violated 720 ILCS 5/32-4(a), a statute prohibiting communication with a person thought to have been summoned as a juror with the

intent to influence that person regarding any matter that may be brought before them in their capacity as a juror.  This probable cause is based on Plaintiff's Facebook posts and Defendant's finding, noted in his police report, that Mark Boston was empaneled on a jury in a traffic case on January 13, 2014.

Further, because Plaintiff does not allege that he was detained after charges were filed, he does not state a claim for malicious prosecution under federal law, even if such a claim exists after the United States Supreme Court's resolution of <u>Manuel v. City of Joliet</u>, in which the Seventh Circuit held that the plaintiff was precluded from bringing a federal due process claim for malicious prosecution because Illinois law provides an adequate remedy for malicious prosecution.  <u>See </u>590 F. App'x 641, 642, (7th Cir. 2015), <u>cert. granted sub nom.</u> <u>Manuel v. City of Joliet, Ill.</u>, 136 S. Ct. 890, 193 L. Ed. 2d 783 (2016).  The Court relinquishes jurisdiction over Plaintiff's state-law claim for intentional interference with electoral expectancy and dismisses the claim without prejudice so that Plaintiff may refile the claim in state court.

# I. **BACKGROUND**[1]

Plaintiff Lucas A. Lamb is a resident of Greene County, Illinois. At all times relevant to this litigation, Defendant Robert McMillen was Sheriff of Greene County, Illinois.  Defendant, a Democrat, was elected Sheriff in November 2010 without opposition.

As both a citizen and a member of the Greene County Board, Plaintiff, a Republican, has been outspoken about his views regarding politics, including his views about the limited role that he believes that the Government should play in the lives of citizens and changes that Plaintiff would make to the Green County Sheriff's Office's policies.  Plaintiff has openly criticized law enforcement for prosecuting crimes that Plaintiff believes to be victimless and for acting in a manner that Plaintiff believes to be duplicitous, unfair, unconstitutional, and cost-ineffective.  Plaintiff has also expressed additional political views that are at odds with Defendant.

On or about December 8, 2013, Plaintiff declared that he would run against Defendant in the 2014 election for Sheriff of

---

1 The following information is taken from the well-pleaded allegations of fact in Plaintiff's Verified Complaint which must be accepted as true in analyzing a Motion to Dismiss for failure to state a claim.

Greene County.  Plaintiff was the only opponent of Defendant in the election.  On or before January 16, 2014, Defendant was aware that Plaintiff was running against Defendant for Sheriff in the 2014 election.

On January 13, 2014, Plaintiff, Mark Boston, Plaintiff's acquaintance and a candidate for the Greene County Board, and others, posted commentary on Boston's Facebook wall.  The relevant comments between Plaintiff, Boston, and T. Koehne were as follows:

Boston (10:29 AM):     Yeah, got selected for jury duty

Plaintiff (10:47 AM):   Hell yes!

Plaintiff (10:47 AM):   Nullify, nullify, nullify!

Plaintiff (11:50 AM):   Fija.org

Boston (11:51 AM):      got it

Plaintiff (11:53 AM):   Hopefully it's a seat belt ticket.  Sometimes I daydream about being on a jury that votes not guilty on a seat belt ticket.  You have the right to judge the law and the action.  Hang the jury, if necessary.  Stand your ground and inform the jury of fija.org.

Boston (11:54 AM):      nope speeding in a school zone

Plaintiff (11:55 AM):   Great.  Remember there must be a clear victim.

Plaintiff (2:46 PM):     What's the verdict man, I'm dying here

T. Koehne (3:12 PM): Are jurors suppose [sic] to talk about cases?

On January 16, 2014, Defendant prepared and filed an

incident report identifying Plaintiff as a suspect for violating 720

ILCS 5/32-4(a), an Illinois statute criminalizing unlawful

communications with a juror.  Defendant's incident report stated:

> On Tuesday, January 14, 2014, at approx. 8:22 p.m., I (Greene County Sheriff Robert D. McMillen, #108) was contacted by Greene County Deputy Sheriff Cliff Elliot, and advised that he has information regarding some communications that Mark Boston had with Luke Lamb, pertaining to a Greene County jury trial, that was conducted on Monday, January 13, 2014.  Deputy Elliot stated that Greenfield Chief of Police John Goode has viewed a Facebook conversation between Boston and Lamb.  I advised Deputy Elliot to contact Chief Goode and have him copy it for me to review.  It should be noted that Mark Boston served on [sic] as a Greene County juror on Monday, January 13th, concerning a traffic case, entitled State of Illinois v. Roberta Lockhart.  The jury was picked on this case on Monday, January 13th, in the morning hours, and the jury trial took place shortly after 1:00 p.m. that same day.
>
> On Thursday, January 16, 2014, at around 11:15 a.m., I met with Chief Goode at the Sheriff's Office.  Chief Goode provided me with the Facebook printouts, detailing the conversation between Mark Boston and "Lou Clam" who is Luke Lamb's Facebook name.  After reviewing the conversation they were having, it was apparent to me that Mr. Boston posted that he was going to serve as a juror on a case.  Shortly after Mr. Boston posted the fact that he had [sic] picked as a juror, Mr. Lamb posted a comment to Mr. Boston to nullify the case, and if he had to, cause a hung jury.
>
> According to 720 ILCS 5/32-4(a), "A person who, with intent to influence any person whom he believes has been summoned as a juror, regarding any matter which is or may be brought before the juror, communicates, directly, or indirectly, with such juror otherwise than as authorized by law." [sic]

Defendant had never investigated an unlawful communication with a juror case in his 20+ years as a police officer. Defendant stated that he reviewed the law in connection with unlawful communications as part of his investigation. However, Defendant did not attempt to interview Plaintiff, Mr. Boston, any other parties to the Facebook communications, or any jurors in the underlying traffic case before submitting his report to the State's Attorney's Office.

Greene County State's Attorney Caleb Briscoe recused himself from the investigation. On February 25, 2014, a special prosecutor with the Illinois Office of the State's Attorney Appellate Prosecutor, Ed Parkinson, signed an Information charging Plaintiff with unlawful communication with a juror, "presumably" based on Defendant's incident report. See Compl. (d/e 1) at ¶23. The charges were filed on March 5, 2014. At trial, Defendant stated that he "assumed" Plaintiff's comments were in regard to a particular case and Defendant admitted that such an assumption was contrary to his law enforcement training. See Compl. (d/e 1) at ¶40.

On October 23, 2016, Plaintiff was acquitted of the offense charged in the Information.  The jury deliberated for less than two hours.  Following the trial, Defendant acknowledged that he had a conflict of interest and that he did not prepare a normal police report or conduct a full investigation.  Defendant claimed that he treated Plaintiff's case the way he would have treated a case against any other person; however, Defendant has acknowledged that he typically produces lengthy, thorough incident reports that are generally "3, 4, 5 pages long."  See Compl. (d/e 1) at ¶33.  Defendant further admitted that "there are some errors in [his] report."

Unlawful communication with a juror is a felony.  If Plaintiff had been convicted, Plaintiff would have lost his right to vote, own firearms, and hold any political office in Illinois.  From the time that charges were filed until the time Plaintiff was acquitted, Plaintiff was effectively barred from campaigning in the Sheriff's election.  Plaintiff was prohibited from making any public comment about his political ideas or managing a campaign.  On October 24, 2014, the day after Plaintiff's acquittal and eleven days before the election,

Defendant stated, regarding the election, that he did not intend to have a debate with Plaintiff "at this late in the game." See Compl. (d/e 1) at ¶¶45, 48.  Final voting in the Sheriff's election took place on November 4, 2014.  Defendant defeated Plaintiff in the election 72% to 28%.

On January 1, 2016, Plaintiff filed a Complaint in this Court, claiming that Defendant's initiation of criminal proceedings against Plaintiff by filing a "false" incident report constitutes: (1) malicious prosecution under both state and federal law; (2) unlawful First Amendment retaliation in response to both Plaintiff's declaration of his candidacy for Sheriff and Plaintiff's other political speech, including the speech Plaintiff posted on Facebook regarding juries; and (3) intentional interference with Plaintiff's candidacy for Sheriff, under 10 ILCS 5/29-17.  On February 22, 2016, Defendant moved to dismiss Plaintiff's claims for failure to state a claim (d/e 6).

The Court now dismisses Plaintiff's claims for malicious prosecution under state law and for First Amendment retaliation because Defendant and the prosecutor both had probable cause to believe that Plaintiff had violated 720 ILCS 5/32-4(a).  Further, the

Court dismissed Plaintiff's claim of malicious prosecution under federal law because, even if such a claim exists, Plaintiff does not allege that he was detained after charges were filed.  See Manuel, 590 F. App'x at 643-44 (noting that "once detention by reason of arrest turns into detention by reason of arraignment . . . the Fourth Amendment falls out of the picture and the detainee's claim that the detention is improper becomes a claim of malicious prosecution violative of due process") (citing Llovet v. City of Chicago, 761 F.3d 760, 763 (7th Cir. 2014).  Additionally, the Court relinquishes jurisdiction over Plaintiff's remaining state-law claim for intentional interference with electoral expectancy, brought under 10 ILCS 5/29-17, and dismisses the claim without prejudice so that Plaintiff may refile the claim in state court.

## II. <u>JURISDICTION</u>

Under 28 U.S.C.A. § 1343(a)(1), this Court has original jurisdiction over Plaintiff's claims of malicious prosecution and First Amendment retaliation brought under 42 U.S.C. § 1983.  See also 28 U.S.C. § 1331.  Further, 28 U.S.C.A. § 1367(a) grants this Court supplemental jurisdiction over Plaintiff's state claims of malicious

prosecution under state law and intentional interference with electoral expectancy under 10 ILCS 5/29-17 because those claims form "part of the same case or controversy" as Plaintiff's § 1983 claims.

### III.  <u>LEGAL STANDARDS</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct.  <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).  Plaintiff's complaint must suggest a right to relief, "raising that possibility above a speculative level." <u>Kubiak v. City of Chicago</u>, 810 F.3d 476, 480 (7th Cir. 2016).  A complaint must allow a court to "infer more than the possibility of misconduct." <u>Iqbal</u>, 556 U.S. at 678.  The Court "accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." <u>Id.</u>

## IV.  ANALYSIS

### a. Plaintiff Does Not State a Claim for Malicious Prosecution Because Defendant Had Probable Cause to Believe Plaintiff Had Unlawfully Communicated With a Juror.

*1. Plaintiff's state law malicious prosecution claim fails because Defendant had probable cause.*

Plaintiff claims that by maliciously filing an allegedly false incident report, which led to criminal charges being filed against Plaintiff, Defendant is liable for malicious prosecution under Illinois law.  Under Illinois common law, a malicious prosecution claim requires five elements: "(1) the commencement or continuance of a civil or criminal judicial proceeding by the defendant; (2) the termination of the proceeding in plaintiff's favor; (3) the absence of probable cause for the proceeding; (4) the presence of malice, and (5) damages to the plaintiff."  Hawkins v. City of Champaign, Ill., 10-2111, 2011 WL 2446312, *7 (C.D. Ill. May 25, 2011) (citing Rodgers v. Peoples Gas, Light & Coke Co., 733 N.E.2d 835, 840 (Ill. App. Ct. 2000); Sneed v. Rybicki, 146 F.3d 478, 480-81 (7th Cir.

1998)).  Taking as true all of the allegations in and attachments to

the Complaint, the Court finds that Defendant had probable cause

to commence prosecution of Plaintiff for violation of 720 ILCS 5/32-

4(a).  Consequently, Plaintiff cannot establish the third element of

his malicious prosecution claim (absence of probable cause).

Therefore, the Court must dismiss the claim.  See Fabiano v. City of

Palos Hills, 784 N.E.2d 258, 265 (Ill. App. Ct. 2002) ("the failure to

establish even one element will preclude recovery for malicious

prosecution").

Typically, probable cause is a mixed question of law and fact.

However, the question of whether allegations, taken as true,

"amount to probable cause is a question of law to be decided by the

court."  Fabiano, 784 N.E.2d at 266.  To determine whether

probable cause exists in a malicious prosecution claim, the Court

views the facts from the point of view of the defendant.  Sang Ken

Kim v. City of Chicago, 858 N.E.2d 569, 574-75 (Ill. App. Ct. 2006);

Szcesniak v. CJC Auto Parts, Inc., 21 N.E.3d 486, 493 (Ill. App. Ct.

2014) ("It is the state of mind of the person commencing the

prosecution that is at issue—not the actual facts of the case.").

Even if the defendant is mistaken as to the facts, the Court still considers the facts as the defendant honestly believed them to be unless the defendant's mistake resulted from gross negligence.  See Ross v. Mauro Chevrolet, 861 N.E.2d 313, 319 (Ill. App. Ct. 2006) (granting the defendant's motion to dismiss the plaintiff's malicious prosecution claim and stating that "a mistake or error that is not grossly negligent will not affect the question of probable cause in an action for malicious prosecution").  Then, based on the defendant's point of view of the facts, the Court asks whether a "person of ordinary care and prudence" would honestly believe that the plaintiff committed the charged offense.  Sang Ken Kim, 858 N.E.2d at 574-75.

The charged offense, in this case, is unlawful communication with a juror under 720 ILCS 5/32-4(a).  Under the statute, a person commits unlawful communication with a juror when the person, with "intent to influence any person whom he believes has been summoned as a juror, regarding any matter which is or may be brought before such juror, communicates, directly or indirectly, with such juror otherwise than as authorized by law."  720 ILCS

5/32-4(a).  The limited case law regarding the statue provides little additional guidance as to what constitutes a violation.  See People v. Yarbrough, 516 N.E.2d 607, 609-10 (Ill. App. Ct. 1987) (stating in dicta that "the communication must involve an attempt to influence a juror," when finding that an indictment couched in the general language of the statute did not provide sufficient notice of the crime); People v. Stuckey, 959 N.E.2d 740, 747 (Ill. App. Ct. 2011) (in a case concerning subsection (b) of the same statute, noting the difference between intent to "influence" in subsection (a) and intent to "deter" in subsection (b) and defining "influence" as "to affect or alter the conduct, thought, or character of by direct or intangible means") (emphasis removed).

Plaintiff claims that based on the facts as known to Defendant at the time that Defendant filled out his report, no reasonable person would have believed that Plaintiff violated the statute. Specifically, Plaintiff claims that no reasonable person would have believed that Plaintiff had the specific *intent to influence* a juror regarding a *specific matter*, as required by the statute.  Plaintiff forwards three arguments to support his claims: (1) Plaintiff did not

know whether Boston had been selected for an empaneled jury or
Boston had simply been selected to report for jury duty; (2) Plaintiff
did not know about the facts or the parties involved in the case; and
(3) a reasonable person would "clearly understand" that Plaintiff's
comments were made "in jest, discussing juror obligations, and
colleague to [sic] additional information that the colleague
requested."  Pl. Resp. to Def. Mot. to Dismiss (d/e 8) at 4.

Plaintiff first argues that he did not have the intent to
influence Boston regarding a specific matter because Plaintiff did
not know whether Boston was selected for jury duty or for an
empaneled jury.  However, the Court views the facts from the state
of mind of the defendant, not the plaintiff.  And viewing the facts
from the point of view of Defendant, the Court finds that a
reasonable person easily would have believed that Plaintiff knew
that Boston was selected for a specific case.  First, although Boston
originally posted only that he got selected for jury duty, Boston later
posted an update including specifics about a case's subject matter
(citation for speeding in a school zone) and start time (1:00 p.m.),
indicating that Boston was selected for the empaneled jury.  See Ex.

1 to Compl. (d/e 1-1) at 10 ("[Plaintiff] send me what I need to know, traffic ticket case, starts at 1."); id. at 10 ("speeding in a school zone").  Second, Plaintiff later posted on Boston's wall, asking about the verdict of the case, implying that Plaintiff understood Boston's previous posts to mean that Boston was on a jury for a specific case.  See id. at 10 ("What's the verdict man, I'm dying here.").  Finally, Defendant noted in his report, after a review of court records, that Boston did in fact serve as a juror for a case matching the facts Boston posted on Facebook.  See id. at 2. Accordingly, a reasonable person would have believed that Plaintiff knew that Boston was selected on an empaneled jury, not simply selected for jury duty.

Plaintiff additionally argues that Defendant was required to interview Boston to figure out what Boston meant by "selected."  Id. at 22.  However, Plaintiff provides no support for his assertion that Defendant was required to interview Boston in order to determine what *Plaintiff* believed to be true.  Further, as noted earlier, Defendant did conduct an independent investigation to find out whether Boston was referring to a specific case in which Boston was

empaneled as a juror.  Defendant reviewed court records and
determined that Boston was indeed empaneled on a jury for a traffic
case on January 13, 2014, the day that the communications at
issue took place.

Plaintiff next argues that, because Plaintiff did not know the
facts of the case or the parties, Plaintiff could not have been
attempting to influence Boston on the specific matter at hand.
However, Plaintiff knew enough about the specific case to forward
Plaintiff's interest in using jury nullification to fight against laws,
such as traffic violations, that Plaintiff finds unjust.  First, the
Facebook posts show that Plaintiff knew that the case concerned a
traffic violation, speeding in a school zone.  Then, after receiving
this information about the subject matter, Plaintiff advised Boston
to base his decision not only on the facts of the case but also on
whether the law itself is just.  Plaintiff further advised Boston to
"Hang the jury, if necessary" and encouraged Boston to provide
outside information to the other jurors.  See id. at 10 ("inform the
jury of fija.org.").  Then, after receiving additional information that
the case concerned "speeding in a school zone," Plaintiff advised

Page 17 of 28

Boston to "[r]emember there must be a clear victim." Id.  Finally, as
noted earlier, Plaintiff later posted regarding his desire to know the
result of the specific case.  A reasonable person would have believed
that Plaintiff had an interest in protesting purportedly unjust
victimless laws through jury nullification and, for that reason,
directed Boston to employ jury nullification and to encourage the
rest of the jury to do so as well, regardless of whether the defendant
was guilty of breaking the law.

Finally, Plaintiff argues that a reasonable person would
"clearly understand" that Plaintiff's comments were made "in jest,
discussing juror obligations, and colleague to [sic] additional
information that the colleague requested."  Pl. Resp. to Def. Mot. to
Dismiss (d/e 8) at 4.  However, Plaintiff does not even go so far as to
identify which postings fit into each category, i.e., in jest, discussing
juror obligations, and providing information to a colleague.  Rather,
Plaintiff simply restates his argument that a reasonable person
would not find that Plaintiff was commenting regarding a specific
case.  Accordingly, based on the foregoing reasons, the Court finds
that a reasonable person viewing the facts as known to Defendant

would have honestly believed that Plaintiff had unlawfully communicated with a juror.

As above, the allegations and exhibits in the Complaint, taken as true, do not establish that Defendant lacked probable cause when Defendant wrote and submitted his incident report.  As a result, Plaintiff has failed to establish an element of his malicious prosecution claim and, therefore, fails to state a claim upon which relief could be granted.

### 2. *Plaintiff does not have a claim for malicious prosecution under § 1983.*

Plaintiff also attempts to state a claim for malicious prosecution under 42 U.S.C. § 1983, citing <u>Washington v. Summerville</u>, 127 F.3d 552, 558-59 (7th Cir. 1997).  Defendant argues that such a claim is not actionable because Plaintiff can only assert a federal malicious prosecution claim if he does not have a remedy under state law.  The Court finds that, even if such a claim exists, Plaintiff does not allege facts sufficient to state the claim.

The Seventh Circuit, in <u>Washington</u>, cited by Plaintiff, suggests that a federal claim for malicious prosecution may exist under the

Fourth Amendment.  However, the Seventh Circuit later withdrew
that suggestion in Washington (and similar dicta in other cases)
and affirmatively held that no federal constitutional claim for
malicious prosecution exists at all, unless Plaintiff has no such
remedy under state law.  See Newsome v. McCabe, 256 F.3d 747,
751 (7th Cir. 2001).  Still, other circuits do allow such a claim and
the United States Supreme Court recently granted certiorari to
address the question.  See Manuel, 590 F. App'x 641.  However,
even if the Supreme Court overrules Manuel and finds that Plaintiff
may bring a malicious prosecution claim based on the Fourth
Amendment, Plaintiff does not allege facts that state such a claim
because Plaintiff does not allege that he was detained after charges
were filed.  See Townsend v. Wilson, __ F. App'x __, 2016 WL
3262630, at *3 n.1 (7th Cir. 2016) (noting the possibility that the
Supreme Court may find a malicious prosecution claim under the
Fourth Amendment but holding that if the plaintiff was "not
detained after charges were filed, he did not suffer a Fourth
Amendment injury that would support" such a claim).  Therefore,

Plaintiff does not state a claim for malicious prosecution under §
1983.

### b. **Plaintiff Does Not State a Claim for First Amendment Retaliatory Prosecution Because the Prosecutor Had Probable Cause to Believe Plaintiff Had Unlawfully Communicated With a Juror.**

Plaintiff next claims that Defendant's violated Plaintiff's First
Amendment rights by initiating Plaintiff's prosecution as retaliation
for Plaintiff's declaration of his candidacy for Sheriff and Plaintiff's
other political speech, including the speech Plaintiff posted on
Facebook regarding juries.  However, Plaintiff does not state a claim
because the allegations and exhibits in the Complaint establish that
probable cause to prosecute Plaintiff existed.

A claim of retaliatory prosecution against an officer other than
the prosecutor is recognized as a claim of "successful retaliatory
inducement to prosecute."  See Hartman v. Moore, 547 U.S. 250,
260 (2006) (finding that a claim of malicious prosecution brought
against a "non-prosecutor who may have influenced the
prosecutorial decision but did not make it himself, the cause of

action is for "successful retaliatory inducement to prosecute.").  To

state any claim for First Amendment retaliation, a plaintiff must

plausibly allege three elements: (1) the plaintiff engaged in an

activity protected by the First Amendment; (2) the plaintiff suffered

a deprivation that would likely deter First Amendment activity in

the future; and (3) the protected activity or speech was at least a

motivating factor for the deprivation.  *See Woodruff v. Mason*, 542

F.3d 545, 551 (7th Cir. 2008).  In a claim specifically for successful

retaliatory inducement to prosecute, a plaintiff must additionally

plead, "as an element of his case, that there existed no probable

cause to support the underlying charge."  See Peals v. Terre Haute

Police Dept., 535 F.3d 621, 626 (7th Cir. 2008) (quoting Hartman v.

Moore, 547 U.S. 250, 259 (2006)).

The test for probable cause under federal law mirrors the

Illinois test that focuses on the state of mind of the person

commencing the prosecution at issue and whether a person of

ordinary care and prudence would honestly believe that the plaintiff

committed the charged offense.  Cervantes v. Jones, 188 F.3d 805,

811 (7th Cir. 1999) (citing Graham v. Connor, 490 U.S. 386, 398

(1989) and <u>Kerr v. Lyford</u>, 171 F.3d 330, 340 (5th Cir. 1999)) (the test for probable cause is "an objective test" to determine whether such facts exist "as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted"). Based on the allegations in the Complaint, Special Prosecutor Ed Parkinson charged Plaintiff with unlawful communication with a juror based only upon Defendant's report. <u>See</u> Complaint (d/e 1) at ¶23 (alleging that the criminal information was "presumably based" on Defendant's police report); <u>id.</u> at ¶25 (alleging that Defendant prepared the only report in connection with the charges).

Plaintiff makes no additional allegations regarding facts available to the prosecutor at the time Plaintiff was charged. Rather, Plaintiff argues that Defendant's report was false and not properly investigated and that Defendant admitted these facts after trial. <u>See</u> Compl. (d/e 1) at ¶38 ("Defendant later admitted during trial that he did not fully investigate the allegations"); <u>id.</u> at ¶39 ("Following the trial, Defendant publicly admitted that 'there are

some errors in [his] report.'").  Specifically, Plaintiff alleges that
Defendant's report was false in stating that "Mr. Lamb posted a
comment to Mr. Boston to nullify the case, and if he had to, cause a
hung jury."  However, this Court has already found that the facts
discovered by Defendant—the Facebook postings and the fact that
Boston was indeed empaneled on a jury for a traffic case on the
date in question—were alone sufficient evidence to establish
probable cause, without further investigation.  Therefore, for the
same reasons, even removing any allegedly false statement made in
Defendant's report, Special Prosecutor Ed Parkinson had probable
cause to charge Plaintiff.

Plaintiff additionally argues that his acquittal of the charges
proves that the prosecutor did not have probable cause to charge
Plaintiff.  However, as noted above, probable cause is evaluated
based upon "the facts within the knowledge of the prosecutor."
Cervantes, 188 F.3d at 811.  Consequently, Plaintiff's allegations
regarding the findings of a jury based on the information available
at trial does not change the Court's ruling here.  Further, even if the
jury was reviewing the same information as the prosecutor,

Plaintiff's acquittal does not establish the absence of probable cause
at the charging stage because the beyond a reasonable doubt
standard at trial is far more stringent than the probable cause
standard.  See Kompare v. Stein, 801 F.2d 883, 891 (7th Cir. 1986)
(the government's failure to meet the "very stringent" guilt beyond a
reasonable doubt standard does not mean that the government did
not meet the "lesser probable cause standard").  Therefore,
Plaintiff's additional argument does not undermine the Court's
previous finding of probable cause.  Accordingly, Plaintiff does not
state a claim for successful retaliatory inducement to prosecute
and, therefore, Plaintiff's claim must be dismissed.

   **c. This Court Will Not Retain Jurisdiction Over Plaintiff's
   Claim Under 10 ILCS 5/29-17, an Illinois statute which
   allows for liability against a person who infringes upon
   another's constitutional rights, privileges, or
   immunities relating to, *inter alia*, the election of
   candidates for public or political party office.**

The Court is permitted to retain supplemental jurisdiction over
state-law claims after all claims over which the Court had original
jurisdiction are dismissed.  28 U.S.C. § 1367(c)(3).  However, the
Court has "almost unreviewable" discretion to relinquish

Page 25 of 28

jurisdiction for such claims, "especially when all federal claims have been dropped from the case before trial." <u>Kennedy v. Schoenberg, Fisher & Newman, Ltd.</u>, 140 F.3d 716, 728 (7th Cir. 1998).  In fact, the general rule is that "when all federal law claims are dismissed before trial, the pendent claims should be left to the state courts." <u>Wright v. Assoc. Ins. Cos. Inc.</u>, 29 F.3d 1244, 1252 (7th Cir. 1994). Further, the Court should not retain jurisdiction when "difficult and unsettled state law issues" are involved in the state claim.  Still, in three particular situations, the court is likely to retain jurisdiction: (1) if the filing of the state claim is precluded in state court by the statute of limitations; (2) if substantial judicial resources have been committed; and (3) if the proper disposition of the state law claim is "abundantly clear."[2]  <u>Wright</u>, 29 F.3d at 1252.

In this case, Plaintiff's remaining state-claim is best brought in a state court.  This Court has identified no cases in federal or state court that articulate how a claim under 10 ILCS 5/29-17 is to be

---

2 The Court could have likewise decided to relinquish jurisdiction over Plaintiff's state-law malicious prosecution claim.  However, because the Court's probable cause analysis in Plaintiff's state-law malicious prosecution claim was identical to its analysis in Plaintiff's successful retaliatory inducement to prosecute claims, the disposition of the state-law malicious prosecution claim is "abundantly clear."

analyzed.  Such an issue of first-impression in state law is best settled by a court in that state.  Moreover, this case does not fit any of the situations in which the court would otherwise retain jurisdiction.  Plaintiff may still bring his claim in state court.  <u>See</u> 735 ILCS 5/13-217 (allowing a plaintiff one-year to file a claim in state court that was previously dismissed by a United States District Court for lack of jurisdiction, even if the statute of limitations has expired).  Because this case is still in the pleading stages, significant judicial resources have not yet been expended.  <u>See</u> <u>Timm</u>, 32 F.3d at 277, n.2 (judicial resources are "yet to be heavily tapped" at the pleading stage).  Therefore, the Court will not retain jurisdiction over Plaintiff's remaining state claim.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss (d/e 6) is now GRANTED.

IT IS HEREBY ORDERED THAT Counts I and II are DISMISSED WITH PREJUDICE; Count III is DISMISSED WITHOUT PREJUDICE.  This case is CLOSED.

ENTER: September 6, 2016.

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE